UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

DEBORAH AHERN,

           Plaintiff,

-against-

OFFICERS' HEALTH AND WELFARE
BENEFITS PROGRAM and COLUMBIA
UNIVERSITY, in its capacity as Plan
Administrator of Officers' Health and
Welfare Benefits Program,

           Defendants.

------------------------------------------------------X

JUDGE CASTEL

07 CV 206

COMPLAINT

TRIAL BY JURY
DEMANDED

RECEIVED
JAN 1 1 2007
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff, Deborah Ahern respectfully alleges as follows:

## NATURE OF ACTION

1. This action is commenced by plaintiff, Deborah Ahern for the purpose of recovering benefits due to her under the terms of the Officers' Health and Welfare Benefits Program (hereinafter referred to as the "Plan"), an "employee welfare benefits plan" within the meaning of 42 U.S.C. §1002(1), i.e. the Employee Retirement Income Security Act of 1974 or "ERISA"; to enforce her rights under the terms of the Plan and to clarify her rights to future benefits under the terms of the Plan.

## JURISDICTION AND VENUE

2. This court has Jurisdiction over this action pursuant to 42 U.S.C. §§ 1132(e)(1) and (f).

3. Venue is proper in this district pursuant to 42 U.S.C. §1132(e)(2).

THE PARTIES

4. Plaintiff, Deborah Ahern (hereinafter, "plaintiff" or "Ms. Ahern"), a resident of the county of Nassau and State of New York, by virtue of her employment with Columbia University, at all times relevant to this action, was and is eligible to receive benefits from the Plan and is thus a "participant" as defined by 42 U.S.C. § 1002(7).

5. Defendant, Officers' Health and Welfare Benefits Program is an "employee welfare benefits plan" and "welfare plan" within the meaning of 42 U.S.C. § 1002(1).

6. Defendant, Columbia University (hereinafter referred to as "Columbia"), by virtue of having been designated as such by the terms of the Plan is an "administrator" within the meaning of 42 U.S.C. §1002(16)(A).

ALLEGATIONS COMMON TO ALL CLAIMS FOR WHICH RELIEF CAN BE GRANTED

7. At all times hereinafter mentioned, the benefits provided by the Plan to which plaintiff lays claim were insured by Cigna Life Insurance Company of New York (hereinafter referred to as "Cigna"), as set forth in CIGNA group policy #NYK-2075.

8. Pursuant to the plan, a participant is considered disabled, if because of injury or sickness, he or she is unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience.

9. Pursuant to the Plan, written notice or notice by any other electronic or telephonic means authorized by CIGNA, must be given to CIGNA after a covered loss occurs or begins, or as soon as reasonably possible.

10. Pursuant to the Plan, written proof, or proof by any other electronic or telephonic means authorized by CIGNA, that disability continues and of appropriate care by, or regular attendance by a physician must be given to CIGNA at intervals required by it.

2

11. Pursuant to the Plan, a claim will not be denied or reduced if it is shown that such proof of loss was given as soon as was reasonably possible.

12. Pursuant to the Plan, participants wishing to commence legal proceedings against the Plan may do so by serving legal process on the Plan Administrator or its agent for service of legal process at the following address: Office of General Counsel, 412 Low Memorial Library, Room 116, 535 West 116th, Street, New York, New York 10027.

13. On January 30, 2004, Ms. Ahern was hired by Columbia in the position of Clinical Coordinator.

## THE PLAINTIFF'S DISABILITY

14. One morning in May 2004, Ms. Ahern awoke with a pounding headache and nausea. A few days later, she flew to Florida for Memorial Day and was seen in a hospital emergency room with gradually evolving pain in the back of her head and vertigo. An initial CT scan was first read as normal, but upon further review, gave rise to a suspicion of a subarachnoid bleed; which in turn, was ruled out by a later spinal tap. Subsequent scans and MRIs, however, demonstrated a CSF leak and multiple subdural hematomas. Blood patches were done followed by gradual improvement, but in June her condition worsened. A subsequent myelogram demonstrated a CSF leak at L5/S1 and another patch was done. Despite the onset of another severe headache with vise-like pain and lightheadedness, a subsequent MRI came back normal.

15. Ms. Ahern continued to complain of headaches and initially sought treatment with Dr. Marcello Olarte. Subsequently, she was referred to Dr. Anne Remmes, Director, Columbia Headache Center with whom she first consulted on July 21, 2004. After taking a medical history and performing a physical examination, Dr. Remmes diagnosed Ms. Ahern as suffering from "daily headaches in probable migraineur with recent history of a CSF leak." She further opined that, unlike the headaches in May and June 2004, which were

3

exacerbated by orthostatic changes, Ms. Ahern's current headaches were likely cervicogenic (caused by traction on the upper cervical nerve roots) and were being exacerbated by the positioning of her head while reading or working on a computer. Dr. Remmes placed Ms. Ahern on a medication regime, which included starting Flexeril and the continued use of Inderal.

16. Over course of 19 months, Ms. Ahern was seen in Dr. Remmes' office on ten occasions; July 24, September 15, October 28, November 10 and December 2, 2004; March 16, April 19, June 8, and December 7, 2005 and January 10, 2006. On each occasion, Ms. Ahern complained of headache. On eight of ten occasions (October 28, November 10 and December 2, 2004; March 16, April 19, June 8, and December 7, 2005 and January 10, 2006) she complained of vertigo and/or dizziness. On nine of 10 occasions (July 21, September 15, November 10 and December 2, 2004; March 16, April 19, June 8 and December 7, 2005 and January 10, 2006) she complained of daytime sleepiness. On two occasions she had express complaints of either nausea (November 10, 2004 and June 8, 2005); lightheadedness and fogginess (December 2, 2004 and December 7, 2005) or photophonophobia (July 21, 2004 and October 20, 2005).

17. The medical records generated pursuant to the above treatment demonstrate that while certain of Ms. Ahern's symptoms may have occasionally undergone remission, on each such occasion she suffered a corresponding exacerbation during which her symptoms would again become chronic. Thus in October 2004, following a period of some improvement occasioned by physical therapy, her headaches and dizziness became more problematic. Then, in November 2004, a severe two week period was followed by a gradual improvement, which still left Ms. Ahern with constant low-grade headache and nausea. In December 2004 she reported that the use of certain medications had lessened her symptoms "a bit" but that there had also been a corresponding increase in her feelings of lightheadedness and fogginess. In March 2005, Ms. Ahern reported that up to the week of her examination, she had been experiencing severe and longer headaches. In April, she reported that her headaches and

4

eased somewhat. However, in June she indicated that there had been a worsening of her headache symptoms accompanied by nausea. In December 2005, Ms. Ahern indicated that her headaches had improved, but that she still was experiencing lightheadedness; was "logy" and continued to suffer from daytime sleepiness. Finally, in January 2006, she reported that her headaches were unchanged; were occurring on a daily basis and that she continued to suffer from daytime fatigue and vertigo.

THE PLAINTIFF ATTEMPTS TO FILE FOR LONG TERM DISABILITY BENEFITS

18. As a result of the above described medical conditions, Ms. Ahern stopped working on June 1, 2004 and has not returned to work since. As a result, she received salary continuation benefits (hereinafter referred to as "short term disability" or "STD" benefits) from Columbia University from June 1st through November 30, 2004.

19. By letter of David H. Arechiga to Ms. Ahern, dated November 30, 2004, Colombia advised Ms. Ahern that her eligibility for STD benefits had expired and that it would be necessary for her to submit a claim for the long-term disability ("LTD") benefits provided for by the Plan, in accordance with the CIGNA policy. That correspondence included copies of forms necessary to initiate the application process. On December 2, 2004, Ms. Ahern completed the group disability claim form and, that same day, gave the form to Dr. Remmes to complete and sign. Sometime in December, 2004, Dr. Remmes returned the forms to Ms. Ahern; however they were unsigned.

20. That same month, Ms. Ahern had a telephone conversation with an administrator at Columbia University regarding the completion of the application. During their conversation, Ms. Ahern advised the administrator that her symptoms, specifically her inability to position her head to read documents for any significant period of time without incurring headaches, would probably delay the submission of the application. The administrator advised

5

Ms. Ahern that Columbia would not accept the application "piecemeal", but that she need not be overly concerned; that such administrative delays were common in the application process. It bears emphasis that Ms. Ahern's statement of her inability to timely complete the application is corroborated by the contemporaneous medical record which demonstrates continued symptoms of headache, lightheadedness and fatigue.

21. Ms. Ahern continued to treat with Dr. Remmes throughout the beginning of 2005 however, a signed application form was not provided. In May 2005, Colombia provided Ms. Ahern with another set of application forms. Shortly thereafter, Ms. Ahern again asked Dr. Remmes to complete and sign the application form. This time, Dr. Remmes refused to sign the forms, stating that, in her view, since Ms. Ahern had initially been seen by Dr. Olarte, he was the appropriate health provider to fill out the application. Ms. Ahern then sought an appointment with Dr. Olarte, however the earliest she could be seen was in early June. Ms. Ahern met with Dr. Olarte and asked him to complete the forms. However, he refused on the basis that he had not seen Ms. Ahern in over a year. Two days later, Ms. Ahern again consulted with Dr. Remmes and told her that Dr. Olarte had refused to fill out the forms. In light of the administrative impasse, Dr. Remmes finally agreed to complete the documents.

22. Despite her representation, however, Dr. Remmes, in the ensuing months, for reasons that remain unexplained, simply failed to complete and execute the documents and return them to Ms. Ahern. In July and August 2005, Ms. Ahern repeatedly called Dr. Remmes' office to no avail. Ms. Ahern also left a phone message for Daphna Sprinzeles, Retirement & Special Services Administrator at Columbia, asking her to contact Dr. Remmes on her behalf however she never responded. Finally, during a phone call towards the end of August 2005, Ms. Ahern expressed in angry fashion, her dissatisfaction with the performance of the Remmes office and that as an employee of Columbia University, she was particularly embarrassed that this scenario had unfolded under the auspices of one of the University's own health care professionals. In response, Dr. Remmes office finally provided Ms. Ahern, in September to

6

2005, an Attending Physician's Statement of Disability, signed by Dr. Remmes on August 30, 2005.

23. Unfortunately, October 2005 proved to be particularly troublesome for Ms. Ahern with regard to her symptomology. In short, throughout October, 2005, Ms.Ahern was so debilitated that she was unable to leave her home to visit her doctor. In addition her condition, specifically the headaches that awakened her every night, incapacitated her from clerical and administrative work such as following up with her disability application.

24. Ultimately, Ms. Ahern completed and signed an LTD benefits application, dated November 16, 2005 which she then immediately submitted to her employer. However Columbia refused to submit the forms to CIGNA. By letter to Ms. Ahern dated November 30, 2005, Columbia, advised her that her application failed to include group LTD and Life Waiver of Premium Claim forms. However, in light of the inordinate delay that had accompanied the application process, the University finally relented and agreed to file the application the next day and submit the waiver form under separate cover.

## THE DENIAL OF PLAINTIFF'S LTD APPLICATION

25. By letter of Rebecca Vensel, Claim Manager, CIGNA to Ms. Ahern, dated January 26, 2006 ("the denial letter"), Ms. Ahern was advised that her application for LTD benefits had been denied.

26. As the denial letter indicates, Ms Ahern's claim was denied two reasons. First, CIGNA determined that the medical evidence submitted in support of the claim did not indicate an inability to perform "any occupation" throughout the benefit waiting period as well as through the benefit start date of November 28, 2004. Second, CIGNA determined that Ms. Ahern failed to comply with the policy's notice of claim provisions.

7

27. The denial letter included an advisement that Ms. Ahern was entitled to the appeal the denial by written appeal; received by CIGNA within 180 days of Ms. Ahern's receipt of the denial letter.

## PLAINTIFF'S ADMINISTRATIVE APPEAL

28. By letter of Wayne J. Schaefer to Rebecca Vinsel, Claim Manager, CIGNA, dated July 21, 2006, and exhibits submitted in support; all received by CIGNA within 180 days of plaintiff's receipt of the denial letter, Ms.Ahern took her administrative appeal of CIGNA's initial determination denying her application for LTD benefits.

29. By letter of Wayne J. Schaefer to Rebecca Vinsel, Claim Manager, CIGNA, dated July 24, 2006, Ms. Ahern supplemented her appeal by submitting copies of the letter of Lynda J. Krasenbaum, MSN to the Wayne J. Schaefer, Esq., dated July 18, 2006 together with her narrative report and chart entries from Ms. Ahern's visits of June 14 and July 18, 2006.

30. By letter of Becky Vensel, Disability Claim Manager, CIGNA to Deborah Ahern, dated July 26,2006, CIGNA acknowledged receipt of plaintiff's administrative appeal.

31. More than 120 days have elapsed since Ms. Ahern's administrative appeal was received by CIGNA and, to date, no determination of the appeal has been rendered.

## THE APPLICABLE STATUTES AND CASE LAW

32. 42 U.S.C. § 1132 (a)(1)(b) provides that a civil action may be brought by a participant or beneficiary to recover benefits due him under the terms of his Plan, or to enforce his rights under the terms of the Plan, or to clarify his rights to future benefits under the terms of the Plan.

33. 42 U.S.C. § 1132 (d)(1) provides that an Employee Benefit Plan may sue or be sued under this subchapter as an entity.

34. 42 U.S.C. § 1132 (g)(1) provides that in any action under the subchapter (other than an action described in paragraph (2)) by a participant, beneficiary or fiduciary, the Court, in its discretion, may allow a reasonable attorney's fee and costs of the action.

35. 42 U.S.C. § 1002 (1) provides that for purposes of this subchapter, the terms "Employee Welfare Benefit Plan" and "Welfare Plan" mean any plan, fund, or program which has heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing, among other things, medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment.

36. 42 U.S.C. § 1002 (7) provides that the term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employers or members of such organization.

37. 42 U.S.C. § 1002 (16)(a) provides that the term "administrator" means the person specifically so designated by the terms of the instrument under which the plan is operated.

38. 29 C.F.R. §2560.503-1(h) requires that a plan administrator's decision reviewing a denial of benefits must ordinarily be made within 60 days of the request for such review but may be made within 120 days for special circumstances.

39. 29 C.F.R. §2560.503-1(h)(4) provides that if no determination is rendered by the deadline, the claim for benefits is deemed denied on review.

40. Where an administrative appeal is deemed denied by reason of a plan administrator's failure to render a determination by the deadline, a United States District Court,

9

in an ensuing lawsuit, reviews the denied claim *de novo*; regardless of whether the plan at issue vests the plan administrator with discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Nichols v. The Prudential Insurance Company of America, 406 F.3d 98 (2d. Cir. 2005).

## AS AND FOR A FIRST CLAIM FOR WHICH RELIEF CAN BE GRANTED

41. The defendants' decision, as set forth in the determination letter, to deny plaintiff's application for long term disability benefits and constituted a wrongful denial of benefits, in violation of plaintiff's entitlement under the terms of the Plan.

   a. Claimant has been disabled, in accordance with the definition of that term set forth in the Plan, for the entire period for which she claims LTD benefits (November 28, 2004 to the present) and remains so disabled.

42. Upon the onset of the medical condition which was to ultimately disable her, Ms. Ahearn was employed by Columbia University as a Clinical Coordinator. Ms. Ahern's position involved a significant degree of responsibility as well as the routine exercise of substantial discretion and judgment. Among other things, Ms. Ahearn, as Clinical Coordinator, was responsible for coordinating grant-funded cardiovascular trials; ensuring that such trials were conducted in accordance with applicable regulations and guidelines; selecting trial sites; training study investigators; planning and running study meetings; managing and coordinating day-to-day operational activities associated with the clinical trials, tracking recruitment and enrollment; analyzing data and preparing manuscripts. Her position also involved significant travel time.

48. As noted above, From June 1. 2004 onward, Ms. Ahearn suffered from a medical condition which not only disabled her from performing her duties as Clinical

10

Coordinator, but similarly, disabled her from performing the material duties of any other occupation for which she might otherwise be (or become) reasonably qualified, by education training or experience.

49. Turning to CIGNA's determination of Ms. Ahern's degree of disability, it suffices to say the determination is plagued by factually inaccurate references to the records in its possession. Records in CIGNA's administrative file were, in the denial letter, either inaccurately referenced or, in certain cases, ignored altogether. In contrast, a review of those same records confirms that, at least for the period for which narrative reports were initially submitted; roughly June 2005 through January 2006, Ms. Ahern suffered from alternating bouts of severe headache, nausea, vertigo, dizziness, and fatigue; following a diagnosis of a spontaneous CSF leak and subdural hematoma in the early part of 2004. Moreover, the exhibits submitted by Ms. Ahern in support of her administrative appeal confirm that she was similarly disabled as a result of the same symptoms throughout the so-called waiting period; June 1, 2004 through November 28, 2004, as well as during the months thereafter.

50. The denial letter identifies nine specific documents from the medical record generated by the claimant's treatment to support its finding that Ms. Ahearn was not disabled. Four of those entries concern diagnostic test result reports; the description of which appears to be accurate. Similarly, a January 11, 2006 questionnaire completed by Dr. Remmes appears to be accurately described in the denial letter. However, a review of the four remaining entries -- descriptions of three narrative reports of Dr. Remmes as well as a reference to a report of Dr. Olarte – give rise to legitimate concerns regarding their accuracy.

I. 7/8/05 (Remmes) - Initially, the date referenced; July 8th, is incorrect. A review of CIGNA's administrative file confirms that the findings set forth in the denial letter accurately reflect a visit of one month later – July 8, 2005. More significantly, the denial

11

letter fails to reference Dr. Remmes's primary finding, consistently reflected in every one of her reports; that Ms. Ahearn continued to suffer from daily headaches triggered by her head position. This omission is particularly troubling given that the administrative file contains a Provider Contact entry, dated December 21, 2005 at 11:35 a.m. which expressly reflects this very finding.

ii. 11/10/04 (Remmes) - The denial letter notes that this brief narrative letter from Dr. Remmes states simply that Ms. Ahearn was under a doctor's care for a spontaneous CSF leak with subsequent subdural hematoma. Such a cursory description completely fails to communicate the significance of this letter. A review of the letter clearly indicates that it was offered by Dr. Remmes to challenge the recent denial of Ms. Ahern's request for continued physical therapy. To that end, Dr. Remmes notes that "during the acute course of her headaches she developed severe neck pain and muscle spasm which has not resolved". Dr. Remmes directly challenges the assertion that Ms. Ahearn is capable of returning to the functional activities of daily living. In contrast, she states Ms. Ahearn "has not yet returned to work, and indeed can hardly wash the dishes in her home without exacerbating the pain".

iii. 12/7/05 (Remmes) - After noting certain encouraging findings in the report, the denial letter, again, inaccurately limits Ms. Ahern's complaints to feelings of tiredness after six to eight hours of sleep.

12

The denial letter completely fails to account for the additional symptomatic findings in the December 7 report; specifically, that Ms. Ahearn was fatigued or "logy" during the day and continued to suffer daily headaches triggered by head position.

    iv.    Hand written chart entries of Dr. Olarte - Included in the administrative file is a two-page chart entry from Dr. Olarte's office dated June 1, 2005. The first page of the document, setting forth Ms. Ahearn's medical history as well as the doctor's findings and impressions is, unfortunately, illegible due to the doctor's handwriting. The denial letter conveniently ignores the doctor's findings, as set forth in his chart and instead simply cites an attached checklist to represent that Ms. Ahearn's examination was normal.

51. In addition to mischaracterizing the above medical records, the denial letter fails to make any reference to an August 30, 2005 report of Dr. Remmes. In that document, entitled "Attending Physician's Statement of Disability", Dr. Remmes specifically identifies the eight occasions she had seen Ms. Ahearn to date and also states the date Ms Ahearn was first disabled from working as a result of her condition; June 1, 2004. In support of her finding of disability, Dr. Remmes notes that Ms. Ahearn suffers from "headaches, daily; fatigue and daytime sleepiness, neck pain". She also notes the continued use of Inderal, Flexeril and intermittent steroids, as well as resort to physical therapy.

52. It is respectfully submitted that the credibility of the denial letter is completely compromised by the omission of any reference to this document. Moreover, there can be no legitimate dispute that CIGNA had this document in its possession at the time it

prepared the denial letter. A review of the legend appearing at the top of document confirms that it was included as page 7 of an eight page facsimile transmission to the CIGNA LTD Intake Department on December 1, 2005.

53. Unfortunately, the failure of CIGNA to incorporate the August 30th report in its determination is indicative of its repeated failure to accurately account for the full record generated by Ms. Ahern's claim. In contrast, a comprehensive review of the same records, as supplemented by the exhibits submitted in support of her administrative appeal, confirms that Ms. Ahern continued, and continues, to suffer from unrelenting symptoms of vertigo, dizziness, fogginess and headache which continue to render her disabled within the meaning of the plan.

    b. The circumstances surrounding the failure of Ms. Ahern's health providers to forward documentation, when coupled with the refusal of her employer to submit documentation which would have placed CIGNA on notice confirms that Ms. Ahern provided notice and proof of her disability as soon as was reasonably possible.

54. The specific facts concerning the chronology of the claim set forth above, confirm that Ms Ahearn provided notice of the claim and proof of disability as soon as was reasonably possible. Beginning in December 2004 and on numerous occasions thereafter, she repeatedly attempted to initiate the application process, only to have her efforts frustrated by the failure of her health providers to complete necessary paperwork. Similarly, Ms. Ahern's employer advised her that it would not submit either an application or other documentation placing CIGNA on notice of the claim until all the necessary paperwork had been assembled. Finally, Ms Ahern's efforts to surmount these bureaucratic roadblocks were hampered by the debilitating symptoms of her disabling condition. Under these circumstances, it is clear that the submission of Ms. Ahern's claim by her employer on December 1, 2005 constituted the giving of notice as soon as was reasonably possible, in conformity with the policy.

14

55. A fundamental premise upon which the instant denial rests is CIGNA's position that (1) Ms. Ahearn was required to personally provide an explanation for the late submission of her claim and that (2) no explanation of any kind was ever provided. Neither assertion is accurate. In fact, during a phone call of December 6, 2005, between Rebecca Vensel, CIGNA Claim Manager and Ms. Ahearn, the latter advised Ms. Vensel of the circumstances surrounding the failure of Dr. Remmes to complete the application. Upon being advised of the situation, Ms. Vensel assured Ms. Ahearn that delays is in the completion of such forms by health providers were by no means unusual. She further advised Ms. Ahearn that any issue raised by her late submission could be rectified by the submission of a letter from either herself *or her healthcare provider*, explaining the cause of the delay.

56. Relying on Ms. Vensel's representation, Ms. Ahearn obtained a note from Dr. Remmes office, dated January 10, 2006, which apologized for any delay and expressly noted that the disability forms had been misplaced by that office. A copy of this note was then faxed by Ms. Ahearn, on January 13th, to Ms. Vensel's attention.

57. It is noteworthy that the denial letter fails to contain any reference whatsoever to the January 10, 2006 note from Dr. Remmes' office. Moreover, this omission, when considered along with the failure of the denial letter to reference the August 30, 2005 Attending Physician's Statement of Disability, signed by Dr. Remmes, supports an inference that CIGNA, in the course of processing this claim, intentionally omitted any reference to the facts and circumstances surrounding Ms. Ahern's attempt to follow through on the application process in August 2005.

58. In summary, the above evidence completely refutes the argument that Ms. Ahearn failed to take any action addressing the carrier's concerns regarding the late submission of the claim. The facts and circumstances surrounding not only the August 2005 Remmes report but also Ms. Ahern's repeated attempts, dating back to December 2004, to initiate the application process, confirm that every reasonable means was employed by Ms. Ahearn to place CIGNA on

15

notice of her claim. That these efforts were ultimately frustrated by an arcane disagreement between her treating physicians as to who was ultimately responsible for completing the forms and by her employer's insistence on technical compliance with its application procedures does not, in any respect, render Ms Ahern's efforts unreasonable, nor do they provide a basis for otherwise denying the application as untimely.

59. For all the above reasons, the plaintiff is entitled to a judgment pursuant to 42 U.S.C. § 1132 (a)(1)(b) in an amount equal to the Plan benefits wrongfully denied and is, further, entitled to a judgment directing the defendants' to honor plaintiff's entitlement to continuing disability benefits.

## AS AND FOR A SECOND CLAIM FOR WHICH RELIEF CAN BE GRANTED

60. Plaintiff, Deborah Ahearn hereby repeats, reiterates, and re-alleges each and every allegation contained in the paragraphs of the complaint numbered 1 through 59, inclusive, with the same force and effect as if more fully set forth herein at length.

61. Plaintiff, Deborah Ahearn requests, in accordance with 42 U.S.C. § 1132 (g)(1), attorneys fees and costs of the action.

## PRAYER FOR RELIEF

62. By reason of the foregoing, plaintiff demands judgment as follows:

    a. On the first claim for which relief can be granted:

        I. Annulling and setting aside of the determination of the defendants set forth in the letter of Rebecca Vensel, Claim Manager, CIGNA to Deborah Ahearn, dated January 26, 2006; denying plaintiff's claim for long term disability benefits;

ii. Awarding damages to plaintiff in an amount equal to the long term disability benefits to which plaintiff is entitled to but was wrongfully denied, by the defendants, for the period commencing with the plaintiff's disability, up to and including the date of entry of judgment; and

iv. Directing defendants to continue paying to plaintiff the long term disability benefits provided for by the Plan.

b. On the second claim for which relief can be granted:

I. Awarding attorney's fees to the plaintiff in accordance with 42 U.S.C. § 1132 (g)(2); and

ii. Awarding the costs and disbursements incurred by plaintiff in this action.

c. Awarding other and further relief as this court may deem just and proper.

Dated: Melville, New York
January 8, 2006

Yours, etc.

LAW OFFICES OF WAYNE J. SCHAEFER, LLC

Wayne J. Schaefer
as Member (WS1129)
*Attorneys for Plaintiff*, DEBORAH AHEARN
48 South Service Road – Suite 102
Melville, NY 11747
(631) 414-0094

17